UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CR-100-1BO

**FILED**
APR 22 2016
JULIE RICHARDS JOHNSTON, CLERK
US DISTRICT COURT, EDNC
BY _____ KM _____ DEP CLK

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL INFORMATION |
| ) | |
| TIFFANY MARIE LOPEZ ) | |

The United States Attorney charges that:

**COUNT ONE**
**Wire Fraud**
**18 U.S.C. § 1343**

### A) Relevant Parties and Entities

1. US Patriot Tactical, LLC (hereinafter "US Patriot") is a veteran-owned retail business headquartered in Columbia, South Carolina, employing approximately 150 people. Many US Patriot employees are military veterans.

2. US Patriot supplies clothing, footwear, and tactical gear for the uniformed services, law enforcement agencies, and first responders. US Patriot has several brick and mortar retail outlets on and near military installations around the United States. US Patriot also sells clothing, footwear, and tactical gear to the public through a web portal.

3. On July 7, 2010, US Patriot hired the defendant herein, TIFFANY MARIE LOPEZ, to serve as manager for the

1

company's accounting and payroll operations. In 2013, the job of Human Resources (HR) manager was added to LOPEZ's portfolio of duties. Prior to her job with US Patriot, LOPEZ served in the United States Army.

4. LOPEZ was initially based at US Patriot's corporate headquarters in Columbia, South Carolina. In the summer of 2013, LOPEZ moved with her husband and family to Harnett County, North Carolina, and continued to work for US Patriot remotely, via her home office.

B) **Lopez's Job-Related Duties**

5. LOPEZ'S responsibilities included preparing, updating, and managing US Patriot's books and financial ledgers; maintaining corporate bank accounts; effectuating monthly payroll and tax disbursements; tracking accounts receivable; and maintaining the company's personnel records.

6. LOPEZ had signatory authority over US Patriot's corporate bank accounts. LOPEZ also had on-line access, via usernames, passwords, and PIN numbers, to these bank accounts. Consequently, LOPEZ had discretionary authority to conduct financial transactions into and out of US Patriot's bank accounts.

7. LOPEZ had access to, and control over, sensitive personnel data regarding all US Patriot employees, including

2

salary, bonuses, fringe benefits, tax withholdings, and bank account numbers.

8. US Patriot had a contract with a payroll processing company to disburse employee salaries and withhold taxes. LOPEZ would transfer a monthly lump sum from US Patriot's bank accounts to the payroll processor, which, in turn, made salary disbursements and withheld taxes for each employee based upon information provided to them by LOPEZ. US Patriot's financial ledgers only showed the monthly lump sum transmitted to the payroll processor.

9. Detailed information about each individual US Patriot employee, such as the person's salary, tax withholdings, and bank routing and account numbers, was maintained by LOPEZ separately within the company's personnel records.

C) **Lopez's Scheme and Artifice to Defraud US Patriot**

10. Between July 2010 and March 2015, LOPEZ fraudulently diverted at least $620,000.00, via hundreds of individual wire transfers, out of US Patriot's bank accounts into bank accounts that LOPEZ controlled.

11. LOPEZ carried out a variety of fraudulent wire transfers, including, without limitation, the following:

    a) Within three days of being hired by US Patriot, LOPEZ initiated her scheme to defraud by making small dollar sham

expense reimbursements, via wire transfers, from US Patriot Bank accounts into her personal checking account. These small dollar wire transfers ranged from $40.00 to $117.50 each.

b) Starting in or around June 2011, about one year after being hired, and continuing until in or around December 2014, LOPEZ collected the names of six independent contractors who had previously worked for US Patriot as so-called "1099 employees." Even though the employment contracts between US Patriot and these six former independent contractors had expired, LOPEZ continued to cause monthly disbursements by the payroll processor to be made in their names. However, LOPEZ changed the direct deposit bank information so that these monthly disbursements were sent by the payroll processor via wire transfers to a bank account controlled by LOPEZ, rather than into the bank accounts of the former contractors. LOPEZ also caused these disbursements to be characterized as expense reimbursements to the former employees, rather than salary.

c) From July 2011 until April 2013, on at least seven different occasions, LOPEZ fraudulently caused extra salary payments to be made in her own name, and deposited in her own bank accounts, unbeknownst to the owners of US Patriot.

4

d) On or about March 12, 2015, the CEO of US Patriot was due to receive a payment of $25,833.33. LOPEZ recorded that payment on the company's financial ledgers, and caused the monies to be disbursed by the payroll processor into the CEO's bank account. At the same time, LOPEZ caused an identical duplicate payment in the amount of $25,833.33 payment to be disbursed into a bank account that she controlled.

### Statutory Allegation

12. On or about March 12, 2015, in the Eastern District of North Carolina and elsewhere, the defendant herein, TIFFANY MARIE LOPEZ, did knowingly and intentionally, having devised a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, transmitted and caused to be transmitted a wire communication, in interstate and foreign commerce, to wit – an unauthorized wire transfer in the amount of $25,833.33 from the bank account of her employer, US Patriot Tactical, LLC, into a bank account at Bank of America that she, TIFFANY MARIE LOPEZ, controlled.

All in violation of Title 18, United States Code, Section 1343.

## Forfeiture Notice

13. The Defendant is given notice of the provisions of Title 18, United States Code, Section 981(a)(1)(c), as made applicable herein by Title 28, United States Code, Section 2461(c), that all of the defendant's interest in all property specified herein is subject to forfeiture.

14. As a result of the foregoing offenses contained in this criminal information, the Defendant shall forfeit to the United States any and all property constituting, or derived from, any proceeds the said defendant obtained directly or indirectly as a result of the said offenses. The United States seeks a money judgment against the defendant in the amount of the gross proceeds of the offenses.

15. If any of the above-described forfeitable property, as a result of any act or omission of the defendant,

   (a) cannot be located upon the exercise of due diligence;

   (b) has been transferred or sold to, or deposited with, a third person;

   (c) has been placed beyond the jurisdiction of the court;

   (d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

It is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said Defendant up to the value of the above forfeitable property.

JOHN STUART BRUCE
Acting United States Attorney

BY: _____
EVAN RIKHYE
Assistant United States Attorney

7